UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: MARIAH REGAN,                                  No. 17-11208-j7

        Debtor.

MARIAH REGAN,

        Plaintiff,

v.                                                          Adversary No. 17-1046 J

U.S. DEPARTMENT OF EDUCATION,

        Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court following a trial on the merits of this adversary proceeding to determine the dischargeability of student loan debt under 11 U.S.C. § 523(a)(8).[1] Plaintiff Mariah Regan represented herself, *pro se*. Manuel Lucero represented Defendant U.S. Department of Education ("USDOE"). Ms. Regan seeks to discharge the balance of her student loan debt as an undue hardship. This Court is bound to apply the test established by *In re Brunner*, 46 B.R. 752 (S.D.N.Y. 1985), *aff'd sub nom. Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987) (the "*Brunner* test"). *See Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1309 (10th Cir. 2004) (adopting the *Brunner* test). As explained below, because Ms. Regan has failed to satisfy the *Brunner* test, her student loans cannot be discharged.

FACTS

Since she was a young woman, Ms. Regan has worked hard to better herself. At age sixteen, she ran away from home to escape mistreatment by her adoptive parents. She earned her

---

[1] All future statutory references in this Memorandum Opinion are to Title 11 of the United States Code, unless otherwise indicated.

GED because she never attended high school. She then went to a small community college and earned an associate degree. After that, she was accepted into the University of Massachusetts at Amherst where she took her courses very seriously and was on the Dean's List.

To fund her education, Ms. Regan obtained several student loans from 1982 through 1994. *See* Exhibit C.[2] After earning a degree from the University of Massachusetts, she began a career in teaching. She moved to New Mexico with her then nine-year-old daughter and worked for the Bureau of Indian Affairs ("BIA") as a teacher from 1993 through 2003, and again from August of 2004 through June of 2005. *See* Exhibit D. Between 1994 and 2003, Ms. Regan made some payments on her student loans. Ms. Regan thought that her student loans could be forgiven if she worked for the federal government through the BIA for a certain length of time. She later learned that her student loans would not be forgiven based on her service as a teacher for the BIA.

In 2003 Ms. Regan underwent emergency surgery at a hospital in Gallup, New Mexico. As a result of the financial difficulties caused by the surgery, she stopped paying on her student

---

[2] The total loan disbursements are:

| College | Date of Loan | Amount of Disbursement |
|---|---|---|
| Greenfield Community College | 07/13/82 | $2,291.00 |
| Greenfield Community College | 02/10/86 | $1,793.00 |
| Greenfield Community College | 12/11/86 | $2,500.00 |
| Univ. Mass. – Amherst | 09/01/88 | $4,720.00 |
| Univ. Mass. – Amherst | 09/26/88 | $1,600.00 |
| Univ. Mass. – Amherst | 08/01/89 | $2,000.00 |
| Univ. Mass. – Amherst | 09/10/90 | $2,986.00 |
| Univ. Mass. – Amherst | 09/20/91 | $4,000.00 |
| | **TOTAL:** | **$21,890.00** |

Ms. Regan's student loan history also reflects a disbursement of $17,948 in August of 1994. *See* Exhibit C. It is not clear from the evidence whether this figure represents 1) an additional loan disbursement; 2) the outstanding balance of all of Ms. Regan's student loans just prior to consolidation of her student loans but before capitalization of the interest added to the principal balance of her consolidated student loan; or 3) the capitalization amount. Exhibit B reflects that a total of $2,297.32 was credited as payments on Ms. Regan's student loans and that a total of $16,793.20 in unpaid interest was capitalized and added to the principal balance. *See* Exhibit B. The evidence does not pinpoint date the unpaid interest was capitalized.

loans at that time. She was forced to borrow from her retirement savings to pay for her living expenses. She left Gallup and moved to Albuquerque. In Albuquerque, she applied for teaching jobs, but was only able to secure part-time positions until 2006, when she obtained a full-time teaching job. Ms. Regan obtained years of deferments and forbearances on her student loans. Any time she was offered a deferment or forbearance, she took the offer. She participated in income-contingent repayment plans ("ICRP") but was unable to keep up with the required payments.

In July of 2008, Ms. Regan consolidated her student loans and executed a promissory note for a Direct Consolidation loan from the USDOE. *See* Exhibit B. The original principal balance of the consolidated note was $29,200.24 and the note provided for interest at a rate of 8.25% per annum. *Id.* The consolidated loan was made under the William D. Ford Federal Direct Loan Program. *Id.* A total of $2,297.32 has been credited as payments on Ms. Regan's student loan debt. *Id.* The evidence does not establish whether the credits were given before or after the consolidated loan was made. *Id.* In 2016, Ms. Regan defaulted on her loan obligation. *Id.* Upon the default, the unpaid interest was capitalized and added to the principal balance of her student loan. *Id.* As of September 12, 2017, the total unpaid balance of the student loan debt was $51,044.03, with interest accruing at the rate of $9.87 per day. *See* Exhibit B.

*Ms. Regan's Current Circumstances*

Ms. Regan is currently 62 years old. She has no dependents. Schedule I filed with her bankruptcy petition reflects monthly wages from her teaching job of $3,299.63. *See* Exhibit A. After taxes ($767.97), mandatory retirement contributions ($365.24), and insurance ($294.58), her monthly take-home pay as reported on Schedule I is $1,871.84. *Id.* Her monthly expenses as reported on Schedule J exceed her monthly income by $155.16. *Id.* As of the time Ms. Regan

filed her bankruptcy petition, the median income for a family of one in New Mexico was $40,722. *See* Official Form 122A-1 - Exhibit A. Based on the income reported on Ms. Regan's Schedule I, her annual income is $1,126.44 less than the median income for a family of one in New Mexico.

Ms. Regan testified that she lives paycheck to paycheck and feels incapable of paying back what she considers an insurmountable student loan debt. Due to interest accrual and the capitalization of unpaid interest as permitted under 34 C.F.R. § 685.202(b), the current balance of her consolidated student loan debt ($51,044.33) is more than twice the total amount of the initial student loan disbursements ($21,890.00) that enabled Ms. Regan to earn her degree.

Ms. Regan's 2017 federal income tax return shows annual income of $44,444.00, which is about $5,000 more than the annual gross income as reported on Schedule I. *See* Exhibits A and E.[3] Ordinarily Ms. Regan's annual gross income is around $39,600. She earned extra income in 2017 because she taught summer school. Ms. Regan testified that she has been able to teach summer school for the last "couple of years." She is currently teaching summer school to earn additional income. When she works during the summer, she can earn about $4,500 in additional income. She could apply for summer programs at other schools, but she has not done so. She has also taken a second job at a JC Penny call center. No evidence of the additional income from Ms. Regan's job at the JC Penny call center was presented to the Court.

Ms. Regan's bankruptcy schedules do not reflect her additional income from summer employment, nor do they account for tax refunds. Last year, she received a tax refund of $700 from the State of New Mexico. She also received a federal tax income refund of $1,327.00 attributable to the 2017 tax year.

---

[3] Schedule I, line 2, shows monthly income of $3,299.63 as of May 12, 2017 when Ms. Regan filed her bankruptcy schedules. That amount, annualized, is $39,595.56.

Since filing her bankruptcy petition, Ms. Regan has not applied for another ICRP. She has steady full-time employment as a teacher. She has generally been able to keep up with her bills, but once she had to take out a payday loan to cover her living expenses. She has an older car, no credit cards, and no family nearby. She acknowledged that she currently makes a little extra due to her summer teaching job, but she wants to use the additional income to take care of other necessities in her life. She would like to retire and feels that repayment of the student loan debt would be a huge burden for her in the future.

*Student Loan Repayment Programs*

The USDOE has a Public Service Loan Forgiveness Program ("PSLFP"). *See* 34 C.F.R. § 685.219. If a student loan borrower qualifies for the PSLFP and makes 120 consecutive qualifying payments, the balance of the loan is forgiven after ten years. A "qualifying" payment means a payment of the full amount of the scheduled loan payment made within 15 days of the loan payment due date. "Qualifying" payments do not have to be consecutive. However, a timely payment of less than the full amount of the scheduled payment, or a late payment of the full amount of the scheduled payment, does not count as a "qualifying" payment. Ms. Regan has applied for the PSLFP program. So far, she has made six qualifying payments. If Ms. Regan continues to qualify for the PSLFP by working as a teacher in a Title 1 school,[4] and makes 114 additional, consecutive qualifying payments, her student loan would be forgiven in nine and one-half years.

A borrower under the PSLFP may also apply for an ICRP, or an income-based repayment plan ("IBRP"), which will determine the amount of the required "qualifying" payments under the

---

[4] "Title 1" refers to Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301 *et seq.,* which "was enacted in an effort to assist financially state and local education associations serving areas with a great number of children from low income families." *Dept. of Educ., State of Hawaii v. Bell,* 770 F.2d 1409, 1412-13 (9th Cir. 1985).

PSLFP. *See* 34 C.F.R. § 685.208(k) (describing the income-contingent repayment plans) and 34 C.F.R. § 685.208(m) (describing the income-based repayment plan). Under an ICRP or an IBRP, a borrower can qualify for a reduced payment amount depending on the borrower's reported income. For the IBRP, the payment amount is 10% of the borrower's discretionary income, determined based on the borrower's adjusted gross income less 150% of the poverty guideline income for the same household size. For 2018, 150% of the poverty guideline income for a family of one is $18,210.00.

If Ms. Regan leaves her current job and is no longer eligible for the PSLFP, she may qualify for a standard ICRP or IBRP, provided her student loan is not in default. If Ms. Regan enrolls in a standard ICRP or IBRP, she will be required to make 240 or 300 qualifying payments on the unpaid balance of the student loan before the balance of the student loan debt is forgiven.

Based on Ms. Regan's adjusted gross income as reported on her 2017 Federal Income Tax return, Ms. Regan's payment under an IBRP would be $219 per month.[5] A borrower participating in an IBRP and a PSLFP recertifies each year to confirm the borrower's income and that the borrower continues to work in a public service field. Based on the annual certification, if Ms. Regan's income were to decrease, her payments would decrease. If Ms. Regan's income were equal to or less than 150% of the poverty guideline, her required loan repayment amount would be zero, and those payments of $00.00 would still count as "qualifying" payments under the PSLFP. Ms. Regan could also apply for a forbearance if something unforeseen were to happen. If Ms. Regan retired during the loan repayment term under a PSLFP, she would no

---

[5] One-hundred fifty percent of the poverty guideline's annual income for a family size of one is $18,210. *See* U.S. Department of Health and Human Services 2017 Poverty Guidelines. Ms. Regan's annual discretionary income for purposes of determining her monthly student loan repayment amount is $26,234 ($44,444 gross income form 2017 tax return, less 150% of the poverty guideline). Ten percent of Ms. Regan's discretionary income is $2,623,40, making her monthly loan repayment amount approximately $219 ($2,623.40 ÷ 12 = $218.62).

longer qualify to participate in a PSLFP because she would no longer be working in a public service job. She could, however, qualify for an income-driven repayment plan, which could have up to a 25-year repayment term.

To participate in the PSLFP and the IBRP, a borrower's loans must not be in default. Ms. Regan's consolidated loan is now in default, but because her loan has not yet resulted in a referral to the Department of Justice and a judgment, the loan can be pulled out of default and sent to a non-defaulted servicer.

DISCUSSION

Dischargeability of student loan debt[6] is governed by § 523(a)(8). Under that section, student loan debt is excepted from discharge unless the debtor proves "excepting [the] debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The undue hardship threshold is demanding, and discharging student loan debt is the exception, not the rule.[7] Section 523(a)(8) does not define "undue hardship." Courts have, therefore, developed tests to determine whether requiring a debtor to repay student loan debt would cause an undue hardship. *See Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 303-05 (3d Cir. 1995) (discussing various tests). The Tenth Circuit uses the *Brunner* test, which requires the Court to find:

---

[6] The type of student loan debt subject to § 523(a)(8) is defined as a loan "made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution;" or "an obligation to repay funds received as an educational benefit, scholarship or stipend;" or "any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual." 11 U.S.C. § 523(a)(8)(A) and (B). The parties do not dispute that the student loan debt at issue in this adversary proceeding is of the type subject to § 523(a)(8).
[7] *See In re Mersmann,* 505 F.3d 1033, 1042-43 (10th Cir. 2007) (observing that "student loans may not be discharged . . . except for the *one* narrow circumstance when 'excepting such debt from discharge . . . would impose an *undue hardship* on the debtor and the debtor's dependents.'") (emphasis in *Mersmann*) (quoting 11 U.S.C. § 523(a)(8), *abrogated on other grounds by United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260 (2010); *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley),* 494 F.3d 1320, 1324 (11th Cir. 2007) (Stating that "[t]he Bankruptcy Code provides that student loans generally are not to be discharged" and describing § 523(a)(8) as a "narrow" exception).

-7-

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Polleys,* 356 F.3d at 1307 (quoting *Brunner,* 831 F.2d at 396). The debtor bears the burden of proving each prong of the *Brunner* test by a preponderance of the evidence. *See Johnson v. Sallie Mae, Inc. (In re Johnson)*, 577 B.R. 895, 902 (Bankr. D. Kan. 2017) ("The debtor must prove all three *Brunner* elements by a preponderance of the evidence to be entitled to a discharge.") (citing *Polleys*, 356 F.3d at 1307). Failure to meet any one of the three prongs of the *Brunner* test will preclude the debtor from discharging the student loan debt under § 523(a)(8). *Id.*[8] Nevertheless, even under the *Brunner* test, the Tenth Circuit has cautioned that "the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Polleys,* 356 F.3d at 1309. This approach better advances the fresh start policy under the Bankruptcy Code. *Id.*

The first prong of the *Brunner* test considers "whether the debtor can maintain a minimal standard of living while repaying the debt." *Polleys,* 356 B.R. at 1309. To make this determination, the Court considers "all relevant factors, including the health of the debtor and any of [her] dependents and the debtor's education and skill level." *Id.* A minimal standard of living means "living within the strictures of a frugal budget." *Educ. Credit Mgmt. Corp. v. Murray,* 2017 WL 4222980, at *2 (D. Kan. Sept. 22, 2017) (additional quotation marks and

---

[8] *See also, Buckland v. Educ. Credit Mgmt. Corp. (In re Buckland)*, 424 B.R. 883, 889 (Bankr. D. Kan. 2010) ("If the court finds that the debtor has failed to prove any of these three elements, the inquiry ends and the student loan is not dischargeable."); *Hollister v. Univ. of North Dakota (In re Hollister)*, 247 B.R. 485, 490 (Bankr. W.D. Okla. 2000) ("All three elements [of the *Brunner* test] must be satisfied individually before a discharge can be granted.") (citations omitted); *Coats v. New Jersey Higher Educ. Assistance Auth. (In re Coats)*, 214 B.R. 397, 402 (Bankr. N.D. Okla. 1997) ("Under the *Brunner* test, if a debtor fails to establish the presence of any of the three factors, the debt is non-dischargeable.") (citing *Faish,* 72 F.3d at 305); *Davis v. Educ. Credit Mgmt. Corp. (In re Davis)*, 373 B.R. 241, 245 (W.D.N.Y. 2007) (stating that the debtor "must establish all three prongs of this *Brunner* test" to satisfy the dischargeability burden).

citations omitted). The frugal budget must be sufficient to meet the needs of the debtor and her dependents for care, including food, shelter, clothing, and medical treatment. *Watson v. Sallie Mae (In re Watson),* 2012 WL 5360949, at *2 (Bankr. D. Kan. Oct. 30, 2012) (citation omitted). To meet the required standard, a debtor must show "more than temporary financial adversity" but need not demonstrate "utter hopelessness." *Buckland,* 424 B.R. at 889 (citing *Innes v. State of Kansas (In re Innes)*, 284 B.R. 496, 504 (D. Kan. 2002)).

Ms. Regan did not satisfy the first prong of the *Brunner* test. Although her bankruptcy Schedules reflect a frugal budget that results in negative net monthly income,[9] her Schedules are not a true picture of her current financial condition. In recent years, she has taught summer school, earning approximately $4,500 in additional gross income. She has also taken a second job at the JC Penny call center, for an undisclosed amount of additional income. She typically receives both state and federal tax refunds. Even based on her income as reported on Schedule I, Ms. Regan's annual income of $39,595.56 exceeds 150% of the 2018 poverty guidelines for a family size of one by $21,385.56.[10] And if her 2017 gross income of $44,444 as reported on her federal tax return is considered, her gross income exceeds the applicable median family income for a family of one in New Mexico by approximately $3,400. *See* Exhibit A – Chapter 7 Statement of Current Monthly Income (listing $40,722 as the median family income for a family of one in New Mexico).

Under the IBRP, Ms. Regan's estimated monthly payments on her student loans would be $219 per month, which equates to $2,628 per year. This aggregate amount is well within the

---

[9] Ordinarily, "[w]hen the debtors' average monthly expenses exceed or nearly match their net income . . . the debtors clearly cannot maintain a minimal standard of living and pay off the student loans." *Innes,* 284 B.R. at 509 (citing *In re Pena,* 155 F.3d 1108, 1113 (9th Cir. 1998)).
[10] Annual gross income ($3,299.63 x 12 = 39,595.56) - $18,210 (150% of the 2018 poverty guideline for a family size of one) = $21,385.56.

-9-

Case 17-01046-j    Doc 22    Filed 09/06/18    Entered 09/06/18 16:40:26 Page 9 of 12

additional income from all sources that Ms. Regan has earned in the last year and will likely be able earn in the future.[11] If she makes the payments of $219 per month under an IBRP, takes advantage of the PSLFP, and makes 114 consecutive qualifying payments, the remaining balance of her student loan debt will be forgiven in nine and one-half years, when she is approximately seventy-two years old.

      Although Ms. Regan is nearing retirement age, she has recovered from her health incident in 2003 and appears able bodied. She has no dependents to care for other than herself. Ms. Regan has steady employment in the field in which she obtained her degree. While she does maintain a frugal budget, the evidence of her true current financial condition establishes that Ms. Regan can maintain a minimal standard of living even if she is forced to repay her student loans under an IBRP and PSLFP available to her.

      Ms. Regan, who is 62, understandably is fearful about whether her student loan debt will present an insurmountable problem if she retires before her loan balance is forgiven. However, no evidence was presented regarding the effect of retirement on Ms. Regan's ability to cope with her student loan debt. There is no evidence before the court regarding the expected amount of her social security income or pension income. Under both the ICRP and IBRP, income is based on adjusted gross income reported to the Internal Revenue Service. *See* 34 C.F.R. § 685.209 and 34 C.F.R. § 685.221. Under Internal Revenue Code § 86, it appears that all or half of Ms. Regan's social security income will be excluded from adjusted gross income and therefore not counted to

---

11

| Income Source | Amount |
|---|---|
| Summer teaching job | $4,500 |
| State and Federal Tax Refunds | $2,027 |
| JC Penny Call Center | ?? |
| **TOTAL:** | **$6,527** |

Taxes will be taken out of her employment income, and she will need to make up for the $155.16 deficit reported on Schedule J. But even with these adjustments, there is enough of a cushion in this additional income for Ms. Regan to add a $219 monthly student loan payment to her budget and continue to maintain a minimal standard of living.

determine the amount of an income driven repayment plan after her retirement. *See* 26 U.S.C. § 86. An income-driven repayment plan will be available to Ms. Regan only if her student loan debt is not in default. *See* 34 C.F.R. § 685.209 (Income-contingent repayment plans) and 334 C.F.R. § 685.221 (Income-based repayment plan). Ms. Regan should consider working with her loan servicer to prevent her loan from going into a default status so she will remain eligible for an ICRP or IBRP. Otherwise, to participate in an ICRP or IBRP she will need to rehabilitate her loan before a judgment is entered. *See* 34 C.F.R. § 685.211(f) (rehabilitation of defaulted loans). If Ms. Regan takes social security benefits while her student loan is in a default status, she risks an offset of a portion of her social security benefits to collect the delinquency. *See Lockhart v. United States*, 546 U.S. 142 (2005) (holding that the United States may offset Social Security benefits to collect federal student loan debt that has been outstanding for over ten years); 31 C.F.R. § 285.4 (Offset of Federal benefit payments to collect past-due legally enforceable nontax debt). In addition, if her student loans are in default status, she risks an offset of her tax refunds to collect the delinquency if she continues to over-withhold taxes from her paychecks. *See* 34 C.F.R. § 685.211(d)(3)(i) (authorizing the Secretary to request the Internal Revenue Service to offset the borrower's Federal income tax refund to collect on a defaulted loan).

      The Court is sympathetic to the fact that Ms. Regan's student loan debt has substantially increased over the life of the loan, and that, given her age and income, it appears that she will never be able to repay the full balance of the loan. However, "Congress has intentionally chosen to impose demanding requirements for the dischargeability of student loans." *In re Weldon,* 2008 WL 4527654, at *5 (Bankr. W.D. Wash. Oct. 1, 2008), *aff'd,* 2009 WL 1034928 (W.D. Wash. Apr. 16, 2009). And the Court does not have the discretion to grant a partial discharge of Ms. Regan's student loans when she has not demonstrated that an undue hardship exists. *See Alderete*

*v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1207 (10th Cir. 2005) ("[A] bankruptcy court cannot exercise its § 105 powers to grant a partial discharge of student loans unless § 523(a)(8) has been satisfied."). Because Ms. Regan has failed to satisfy the first prong of the *Brunner* test, she has not demonstrated that excepting her student loan debt from discharge would impose an undue hardship. The Court will, therefore, enter judgment against Ms. Regan and in favor of the USDOE determining that the student loan debt at issue in this adversary proceeding is non-dischargeable.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: September 6, 2018

COPY TO:

Mariah Regan
PO Box 15244
Rio Rancho, NM 87174

Manuel Lucero
Assistant U.S. Attorney
PO Box 607
Albuquerque, NM 87103-0607